JAMES W. WARD, a minor, by his father and next friend, ALFRED T. WARD et al., Plaintiffs-Appellants, v. EDWARD ONDREJKA et al., Defendants-Appellees.

(No. 55437;

First District—May 15, 1972.

Piacenti & Cifelli, of Chicago Heights, (Conrad W. Sanders, of counsel,) for appellants.

Beverly, Pause, Duffy & O'Malley, of Chicago, (Frank J. Pause, John M. Murray, and Dom J. Rizzi, of counsel,) for appellees.

Mr. JUSTICE BURKE delivered the opinion of the court:

This was an action to recover for personal injuries sustained by plaintiffs when the automobile in which they were riding allegedly struck a steer on the public highway, which automobile was in turn allegedly struck from the rear by a second automobile. Joined as defendants in the action were the owner of the steer, the owner of the farm from which the steer strayed, the owner and the operator of the second automobile, and a truck driver who had delivered a load of steers to the farm, one of which was the steer allegedly struck by the automobile in which plaintiffs were riding.

A motion for summary judgment was filed by the defendant truck driver, supported by an affidavit and depositions. The trial court granted the motion, entered judgment for the defendant truck driver, and found that there was "no just reason to delay appeal" of the judgment. Plaintiffs appeal.

From the pleadings, affidavits, depositions and interrogatories filed below, it appears that at about 5:00 P.M. on January 5, 1966, defendant Ray Nykaza purchased ten head of cattle from a sale barn at Lowell, Indiana. Having no means of transporting the cattle to his farm located on Joe Orr Road at State Street in South Cook County, Illinois, Nykaza engaged a truck driver, defendant Gilbert Reichert, to transport the cattle to the farm for a fee of ten or twelve dollars. Reichert loaded the cattle onto his truck without the aid of Nykaza and proceeded to transport them to the farm. In the meantime Nykaza telephoned his brother, Henry, at the farm and informed him of the forthcoming delivery.

The cattle truck arrived at the Nykaza farm sometime between 5:00 and 5:30 that evening, and Henry Nykaza directed Reichert to back the truck up to a 150 feet by 250 feet fenced lot area next to the barn, which Reichert did. The rear of the truck occupied the space to the lot area

where the lot fence gate opened and closed. Reichert thereupon removed a ramp from beneath his truck which provided the animals in the truck access to the ground.

It appears that Henry Nykaza and Reichert experienced difficulty in getting the cattle off the truck, so Henry Nykaza entered the part of the truck containing the cattle and began "pushing," "shooing" and "talking" them out of the truck. It further appears that Reichert was attempting to move the cattle off the truck from the ground by means of a pole, which Henry Nykaza stated was the "common or usual way of getting cattle off the truck." Nykaza further testified in his deposition that in his experience, if one of the cattle can be made to go down the ramp, the others in the herd usually follow.

Henry Nykaza was successful in getting three head of cattle off the truck, but the other seven returned to the front portion of the truck. He stated in his deposition that after the other seven cattle had gotten off the truck, he heard a dog barking and observed his brother Ray Nykaza, chasing the cattle into a wheat field adjoining the lot area where they had been unloaded. He testified that he did not notice a dog present in the vicinity of the unloading at the commencement of the unloading process. Reichert stated to Henry Nykaza that Nykaza would need aid in rounding up the cattle, but Nykaza replied, "No, I don't think so because the other wheat field is all fenced in and they couldn't get over it." Henry Nykaza then paid Reichert the agreed delivery fee and Reichert drove off in his truck.

Ray Nykaza testified in his deposition that he had left Lowell, Indiana, and had arrived at the Nykaza farm just as his brother and Reichert were beginning to unload the cattle. He stated that he observed no dog present at the scene of the unloading at that time. He testified that as the cattle started coming down the ramp, a dog belonging to his mother ran out from beneath Reichert's truck and started barking and chasing the cattle. He stated that the cattle ran to the fence enclosing the lot area, that they either broke through or jumped over that fence, and that they ran into an adjoining wheat field, which was enclosed with a fence. Ray Nykaza testified that he pursued the cattle and the dog who was running after them, that because of the darkness he could not see the cattle, but that he could only follow the dog's barking. The entire ten head of cattle then broke through the fence enclosing the wheat field and ran into a neighbor's field, which was not enclosed with a fence.

Ray Nykaza pursued the cattle for a while without success and returned to the farm, after which he and his brother together went out in search of the cattle. Having no success in locating the cattle, the Nykaza brothers notified the police that the cattle were at large. Later

that evening the automobile in which the plaintiffs were riding apparently struck one of the estrays on South Cottage Grove Avenue.

Count III of plaintiffs' complaint alleged that defendant Reichert (a) negligently and carelessly unloaded the cattle from his truck without first taking adequate precautions to prevent their escape; (b) negligently and carelessly unloaded the cattle in the presence of a dog; and (c) negligently and carelessly failed to pursue and recapture the cattle, or to otherwise assist in their recapture.

The motion for summary judgment filed on behalf of the defendant Reichert contained excerpts from the discovery depositions of the Nykaza brothers that, *inter alia,* the cattle broke loose due mainly to the barking dog and the strange surroundings; that no one noticed the presence of the dog at the time the cattle were being unloaded; that the dog had never chased cattle in the past; and that the wheat field into which the cattle had run was adequately fenced at the time they had broken into the field, (the fence consisting of a strand of barbed wire on the top and hog wire below). The motion further alleged that Reichert was hired by Ray Nykaza to haul the cattle to the Nykaza farm, and that after he received his agreed compensation he returned to his home in Indiana.

In plaintiffs' reply to the motion for summary judgment, they allege that the motion should be denied for the reasons that the motion and the matters filed in support thereof fail to remove "all contrary reasonable inferences of fact;" that they pose only "questions of belief and inference;" that they show that Reichert "failed to safely unload the cattle;" that Reichert did not undertake to pursue the cattle; and the like. The motion for summary judgment was allowed and judgment was entered for the defendant Reichert and against the plaintiffs.

On appeal plaintiffs contend that Reichert was a "keeper of cattle" at the time of their escape from his truck within the meaning of the Animal Act, and that plaintiffs should therefore be aided by the presumption of negligence on Reichert's part which is created by the statute, which in turn is sufficient to carry the case to the jury. See Ill. Rev. Stat. 1971, ch. 8, par 1.

■■ It should be noted at the outset that plaintiffs failed to plead, or otherwise allude to the statute upon which they now rely. Their complaint with regard to Reichert alleges only a breach of common law duty, and under the circumstances plaintiffs could be estopped from relying upon the statute on appeal. See Supreme Court Rule 133 (a). But see also *Blakely v. Glass,* 342 Ill.App. 90, 95 N.E.2d 128, at pages 2 and 3 of that abstract opinion.

■■ Nevertheless, even if the statute was properly relied upon below, the facts brought out by the pleadings, interrogatories, depositions and

affidavits filed below reveal that defendant Reichert was not a "keeper of cattle" at the time of their escape from the Nykaza farm. To constitute one a "keeper of cattle" under that statute he must have the mangement, custody, control or care of the cattle. See *Heyen v. Willis*, 94 Ill.App.2d 290, 293, 236 N.E.2d 580, 582.

Reichert was directed by Henry Nykaza where to position his truck for unloading; Nykaza took physical control of the unloading by boarding the truck in an effort to get the cattle off the truck. Although Reichert used a pole to prod the cattle off the truck, it appears, that this was a customary method of getting cattle off a truck and does not in any manner indicate that Reichert had taken control of the cattle. The facts further show that no one knew that the dog was in the vicinity of the unloading; it also appears that the dog had not chased cattle in the past and it may be reasonable to infer that there had been cattle on the Nykaza farm prior to the day in question in light of Ray Nykaza's testimony that he earned his living by purchasing cattle, fattening them, and re-selling them. It cannot be said that defendant Reichert had custody, control, or the like, of the cattle during the unloading process, or thereafter when Henry Nykaza assured Reichert that the cattle were in a safely fenced field on the Nykaza property. See *Heyen v. Willis*, 94 Ill.App.2d 290, 293, 236 N.E.2d 580, 582; *Moreno v. Beckwith*, 77 Ill.App.2d 443, 222 N.E.2d 918.

■■■ It further appears that from the matters filed below defendant Reichert violated no common law duty in his handling of the cattle. Although plaintiffs' reply to the motion for summary judgment denies the matters alleged in the motion for summary judgment, it does so only in general and conclusionary terms. No genuine issue as to any material fact exists. *Fooden v. Board of Governors of State Colleges and Universities of Illinois*, 48 Ill.2d 580, 272 N.E.2d 497.

With respect to any common law duty which Reichert may have assumed in assisting in the unloading process, the only action taken by him was the prodding of the cattle with a pole, a process which appears to have been the usual and customary method of getting cattle off a truck; that fact goes undenied and unrebutted in plaintiffs' reply to the motion for summary judgment.

As to the question of his having embarked upon the unloading of the cattle without first having taken precautions to prevent their escape, Reichert merely obeyed the orders of Henry Nykaza in positioning his truck for the unloading. The truck occupied the area where the gate to the lot area opened and closed, and the lot area was fenced. It is doubtful that Reichert had any duty to inspect the lot area fencing, or to anticipate the presence of a dog in the unloading area, or the like.

Finally, Ray Nykaza stated that the dog, which belonged to the Nykaza brothers' mother, had never chased cattle before.

As to the question of any duty on Reichert's part to pursue the cattle after their escape from the unloading area, Henry Nykaza rejected Reichert's offer of aid in rounding up the cattle, stating that the cattle were in an area of the Nykaza farm which had adequate fencing and which had held cattle in the past. The trial court properly entered summary judgment in favor of defendant Gilbert Reichert. Ill. Rev. Stat. 1971, ch. 110, par. 57; *Fooden v. Board of Governors of State Colleges and Universities of Illinois*, 48 Ill.2d 580, 272 N.E.2d 497.

For these reasons the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and LYONS, J., concur.